

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LOPEZ, | )<br>) |
| Plaintiff | )<br>) No. 09 C 5551 |
| v. | )<br>) The Honorable William J. Hibbler |
| NEWELL RUBBERMAID, INC.<br>d/b/a TECHNICAL CONCEPTS, INC., and<br>TECHNICAL CONCEPTS INC., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Michael Lopez alleged that his former employer, Technical Concepts, Inc., which was later acquired by Newell Rubbermaid, Inc. (collectively, "Defendants"), retaliated against him for complaining about national-origin discrimination. The Defendants move for summary judgment.

### I. Factual Background

Local Rule 56.1 sets forth the manner in which the moving party puts forward undisputed material facts that entitle it to judgment as a matter of law and in which the nonmoving party responds to the moving party's assertions. L.R. 56.1. Among other things, in the case the nonmoving party disputes a fact asserted by the moving party, it must point to specific portions of the record on which it relies. L.R. 56.1(b)(3)(B). Because it helps courts to organize evidence and identify disputed facts, Rule 56.1 plays an important role in summary judgment proceedings. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Where a nonmoving party does not point the

court to evidence placing a material fact in dispute, the moving party's statement is deemed admitted. L.R. 56.1(b)(3)(C); *Cracco*, 559 F.3d at 632.

Lopez has not even remotely complied with Rule 56.1. Throughout his Rule 56.1(b)(3)(B) Statement, Lopez consistently fails to point to any evidence to support the contentions he makes. See Pl. 56.1(b)(3)(B) St. ¶¶ 2, 3, 5, 6, 8, 12, 13, 17-21, 23, 24, 28, 29, 31, 39, 40, 43, 48, 54, 55, and 57. In other paragraphs of his Rule 56.1(b)(3)(B) Statement, Lopez admits only a portion of the Defendants' proffered statement and by implication denies the remainder of the statement, but then provides neither justification for the denial nor evidence supporting the denial. See Pl 56.1(b)(3)(B) St. ¶¶ 32, 34, 35, 36, 37, 38, 41, 42, 45, 47, 49, 51, 52. Occasionally, Lopez denies statements that clearly have factual support in the record. See Pl 56.1(b)(3)(B) St. ¶¶ 1-2 (citing to Lopez's Complaint), 14, 15 (pointing to an e-mail chain clearly supporting the asserted factual statement), 16 (citing an incorrect exhibit but a correct portion of the deposition where the correct exhibit is identified), 22. Finally, when Lopez does point to a source of evidence in support of his contention, he fails to point the Court to <u>specific</u> portion of the record. See Pl 56.1(b)(3)(B) St. ¶ 9 (pointing only to Lopez's affidavit and not a specific portion of that affidavit, which contains 21 numbered paragraphs). In short, Lopez's Rule 56.1(b)(3)(B) Statement makes only a solitary reference to his affidavit and otherwise wholly fails to refer to the record. In fact, even in his Response Brief, Lopez makes only two cursory references to the record, pointing the Court to a hand-drawn sketch of the Defendants' office and quoting a portion of the deposition of a former coworker. Because Lopez has not complied with Rule 56.1, the Court deems Lopez to have admitted all of the factual statements noted above.

In addition, Lopez fails to provide the Court with any statement of additional facts that warrant the denial of summary judgment as Local Rule 56.1(b)(3)(C) requires. Instead, Lopez submits an affidavit purporting to identify facts in support of his position. An affidavit is not a substitute for a statement of facts under Rule 56.1, as it does not assist the Court in organizing the evidence and identifying the genuine disputes of material fact. *See Midwest Imports Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (Rule 56.1 materials are the only way to dispute facts or present additional facts to the court); *Bledsoe v. Potter*, No. 03 C 3890, 2005 WL 2230188, at *2-3 (N.D. Ill. Sep. 7, 2005).

Even if it were, Lopez's affidavit is replete with cursory statements that depend on hearsay, lack foundation, conflict with prior deposition testimony, or are not based on personal knowledge. A few examples suffice to illustrate the affidavit's deficiencies. For example, Paragraph Four, which asserts that Lopez was never offered a sales representative position, conflicts with Paragraph Six and Lopez's deposition testimony. Paragraph Six speculates about the reasons for the Defendants' actions, thus asserting facts not based on Lopez's personal knowledge. Paragraph Eleven describes a change in his job title as a demotion and conflicts with his deposition testimony. (Lopez Dep. at 17-18). Paragraph Fourteen relies upon hearsay to describe another employee's reputation in the company and also refers to documents that Lopez fails to identify. Paragraph Eighteen refers to disciplinary action taken against another employee but fails to reference any documents supporting that assertion. Paragraph Twenty-One refers to an e-mail sent by one of the Defendants' employees without authenticating or even providing the Court with a copy of the e-mail. Nearly every paragraph of the affidavit contains some deficiency.

3

Defendants move to strike Lopez's affidavit. Under Rule 56(c)(4), any affidavit used to oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). A court must not consider the portions of an affidavit that fail to comply with the rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004). Here, the inadmissible parts to Lopez's affidavit are so interwoven throughout the affidavit that it is impracticable to separate the inadmissable portions of the affidavit from the admissible. As noted earlier, Lopez also improperly attempts to use his affidavit as a substitute for a Rule 56.1 statement. For these reasons, the Court strikes Lopez's entire affidavit.

Lopez began working at Technical Concepts in 1999 as an Outbound Marketing Representative. Technical Concepts sold restroom supplies such as soap or air freshener to customers with public restrooms. As an Outbound Marketing Representative, Lopez generated customer leads by making telephone calls to or receiving calls from potential customers and setting up appointments for Technical Concepts' sales personnel. The Outbound Department contained only two other employees — Betty Jo Katehos, who was another Outbound Marketing Representative and Kurt Metz, who was an administrative clerk.

In April 2006, Edward Whartanaby, Techincal Concepts' Vice President of Sales moved the Outbound Department under the supervision of the Customer Service Division, managed by Ann Pedersen. Whartanaby believed that the Outbound Department was not meeting its expectations and asked Pedersen to improve the Department's performance. Pedersen retained a consultant to improve the Outbound Department staff's knowledge of Technical Concepts' products. She retained

a second consultant to improve the Outbound Department staff's production and call volume. Pedersen also met with and counseled Lopez and Katehos.

In addition to hiring consultants to improve the Outbound Department's production, Pedersen also re-focused the Department's job responsibilities. Before Pedersen became the Supervisor for the Outbound Department, Lopez went on "ride-alongs" with route drivers for one of its distributors. On these "ride-alongs" Lopez would distribute free samples of a product that Technical Concepts offered for sales but did not engage in any consultive selling. After Pedersen took over the Outbound Department, she eliminated the "ride-along" practice because she did not want the personnel resources of the Outbound Department used by the Midwest Regional Sales Manager.

Despite Pedersen's changes, she remained unhappy with the Outbound Department's productivity. In June 2006, Pedersen met with both Lopez and Katehos to discuss their work performance. Among other things, Pedersen criticized Lopez and Katehos for not spending sufficient time on the phone and lacking focus. Both Lopez and Katehos received memos from Pedersen documenting their performance deficiencies and warning them that they might face corrective action if they did not improve their performance.

At this meeting, Lopez requested a future meeting with Pedersen, Whartanaby, and Mary Barden, Technical Concepts' Human Resources Manager, which took place a few days later. At the second meeting, Lopez criticized Pedersen, Whartanaby and Barden and rejected their assessment of his performance. During the meeting Lopez questioned the managers regarding the reasons he had not been promoted to a sales manager's position in Chicago. Whartanaby explained to Lopez that Technical Concepts did not have an entry-level sales position available in Chicago and inquired if Lopez would be interested in a position in Charlotte, North Carolina. Lopez told Whartanaby that

he was not interested in a position in Charlotte and suggested that the reason he was not being offered a sales position in Chicago was because he was Mexican. Throughout the meeting, Pedersen and Whartanaby believed that Lopez was hostile, not respectful, argumentative, and unwilling to engage in discussion.

According to Technical Concepts, the reason it had no entry-level sales position in Chicago was because Midwest Regional Sales Manager Mark Aubuchon believed that manufacturer's in the area had begun employing independent representatives to compete with Technical Concepts sales personnel and therefore Technical Concepts employed only experienced sales persons in the area. In April 2006, before Lopez's meeting with Pedersen, Whartanaby, and Barden, Technical Concepts had hired Jim Grady, who had 13 years of sales experience, to a non-entry level sales position in Chicago. In February 2007, it hired James Wede, who had eight years of sales experience, to fill another non-entry level sales position in Chicago.

In July 2006, Lopez complained to the EEOC that Technical Concepts had discriminated against him. Although the EEOC assigned an investigator to his allegations, it took no action to investigate Lopez's claims. Instead, in 2009, it dismissed the claims and issued him a right-to-sue letter.

While Lopez's EEOC claims were pending, Technical Concepts changed the way in which his pay was calculated. Prior to January 2007, Lopez was a salaried employee, making approximately $49,000 per year. Acting on advice from its attorneys, Technical Concepts converted Lopez to an hourly employee because it believed that employees in the Outbound Department might not be exempt from overtime under the Fair Labor Standards Act. After the reassignment, Lopez continued to make approximately $49,000 per year, but was then eligible for overtime pay if he

worked more than forty hours per week. Even after the reassignment, another Technical Concepts employee complained to the Department of Labor. In the investigation that followed, the Department of Labor found that Technical Concepts had improperly classified Lopez as a salaried employee and directed it to pay him overtime back pay.

Around April 2007, Techincal Concepts reorganized its office space. As a result, Lopez moved approximately 50-75 feet, away from the "center" of the office. Every employee in the Outbound Department, Human Resources Department, Customer Service Department, and Help Desk was relocated. No one in these departments was given an office with a window.

In May 2007, Pedersen gave Lopez a negative performance review. Pedersen had given Katehos a similarly negative review in March 2007. Lopez objected to Pedersen's review, and at his request, she redrafted it. Lopez objected to the revised review and discussed it with Technical Concepts' President who told Lopez he believed that the review had been fair. Lopez resigned in August 2007.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in its favor. Fed. R. Civ. P. 56(c). Although a court must view all evidence and inferences in the light most favorable to the nonmoving party, once the moving party has met the initial burden, the nonmoving party must then

7

"go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment requires the non-moving party to come forward with the evidence that it has; it is the put "put up or shut up" moment of the lawsuit. *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009). The non-moving party thus must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir.2006); *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir.2005). As noted earlier, Lopez has done very little to point to evidence in the record to support his claims.

## III. Analysis

A plaintiff may prove a Title VII retaliation claim using either the direct or the indirect method. *Hill v. Potter*, 625 F.3d 998, 1000-1001 (7th Cir. 2010). Under the direct method, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the two. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). Under the indirect method, the first two elements remain the same, but rather than demonstrate a causal connection, a plaintiff must demonstrate that he performed his job satisfactorily and that other employees who did not engage in statutorily protected activity were treated more favorably. *Hill*, 625 F.3d at 1001. Lopez's arguments in opposition to the Defendants' motion fail to make clear whether he proceeds under the

direct or indirect method. Throughout his brief, however, Lopez repeatedly refers to causal connections.[1] The Court thus will address Lopez's arguments under the direct method.

In a retaliation case, adverse employment actions are those that a reasonable employee would find to be materially adverse such that he would be dissuaded from engaging in protected activity. *Silverman v. Bd. of Educ. of City of Chicago*, — F.3d —, 2011 WL 941518, at *9 (7th Cir. Mar. 21, 2011). Unlike a claim based on discrimination where an employee must identify a tangible consequence resulting from the employment action, an employee alleging retaliation need only demonstrate that the employment action would likely deter a reasonable employee from complaining about discrimination. *Id.* In this respect, the context in which an alleged retaliatory act occurs matters in determining what constitutes an adverse employment action. *Id.*

Lopez points to many acts taken by Technical Concepts to demonstrate that he suffered an materially adverse employment action. Most of the actions pointed to by Lopez, however, are not materially adverse employment actions. For example, Lopez argues that Technical Concepts' decision to reclassify him from a salaried to an hourly employee constitutes an adverse employment action. The undisputed evidence, however, demonstrates that the FLSA required Technical Concepts to reclassify Lopez and in fact that the Department of Labor later found that he had not been properly classified. Moreover, the undisputed evidence demonstrates that Lopez continued to receive

---

[1] Lopez makes only one mention in his brief to similarly situated employees. The reference is fleeting, asserting in conclusory fashion that he can demonstrate that he was treated less favorably than similarly situated employees. The only employee Lopez references in that paragraph is Katehos. Lopez, however, does not describe how Technical Concepts treated Katehos more favorably than it treated him. Rather, he describes how Katehos was not as good an employee as he was. He then goes on to explain that "there were no other employees at Technical Concepts who were treated even close to the same as [he was]," without even so much as mentioning a single employee by name.

9

approximately the same salary as he worked before. Lopez argues, illogically, that Defendants' assumptions about his salary are not warranted because he "routinely worked in excess of 40 hours [per week]." But if this were true, Lopez would have made more, not less, after being changed to an hourly rate because he would have then been entitled to overtime compensation.

Lopez also complains that Technical Concepts relocated him to an office without a window. Not everything that makes an employee unhappy is an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Moving an employee to an undesirable location can be an adverse employment action if it subjects the employee to humiliating, degrading, or unsafe conditions or negatively and significantly alters his working conditions. *Tart v Illinois Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (relocation from one person truck to a cold, wed, muddy trench is an adverse employment action). *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir.2002) (observing that moving employee desk to a closet could be an adverse employment action). Technical Concepts' decision to relocate Lopez to an office without a window simply does not rise to the level of an adverse employment action.

Finally, Lopez argues that he suffered an adverse employment action when Pedersen discontinued the practice of "ride alongs." In discontinuing the "ride alongs," Pedersen at worst redefined the job responsibilities of an Outbound Marketing Representative. Unless that redefinition altered Lopez's tangible benefits or altered his career prospects, it is not an adverse employment action. *Herrnreiter v. Chicago Housing Authority*, 315 F.3d at 744-45. The record makes clear that Lopez received no extra benefits in participating in the "ride alongs." Nor is there any evidence in the record that the "ride alongs" opened avenues for advancement within the company. Thus, the elimination of the "ride along" practice cannot be an adverse employment action.

Lopez complains of two other decisions — the decision to fill the Chicago sales position with experienced sales persons and negative performance evaluations. For the purposes of this motion, the Court assumes that each of these actions could be considered a materially adverse employment action in the context of a retaliation claim. *Silverman*, — F.3d —, 2011 WL 941518, at *9 (holding that negative evaluations can be adverse employment actions in the context of a retaliation claim). Lopez cannot show a causal connection between these (or any of the aforementioned) actions and his statutorily protected activity. At the earliest, Lopez complained about the Defendants' national origin discrimination in a June 2006 meeting with Pedersen, Whartanaby, and Barden when he told Whartanaby that he believed he had not been promoted because of his national origin. Lopez filed an EEOC complaint in July 2006.

Technical Concepts placed Pedersen in charge of the Outbound Department in April 2006, prior to Lopez's statutorily protected activity, because the Department was not meeting the company's expectations. Shortly thereafter (and prior to statutorily protected activity), Pedersen retained multiple consultants to improve the Department's performance. In June 2006, still prior to the meeting in which Lopez alleged that Technical Concepts was discriminating against him, Pedersen met with Lopez about his job performance and among other things criticized him for not spending sufficient time on the phone. Pedersen also wrote a memo to Lopez documenting his performance deficiencies and warning him of future corrective action. Lopez did not accept Pedersen's criticism and asked for a meeting with Pedersen's supervisor, Whartanaby, and a Human Resources Manager. At that meeting, the managers again documented problems with Lopez's performance. Only at the end of this meeting did Lopez finally voice his claim that the reason Technical Concepts had not promoted him was because of his national origin. These negative

evaluations and criticisms thus cannot be considered retaliatory because they occurred prior to Lopez's complaints of national origin discrimination.

Approximately ten months after he complained of national origin discrimination, Lopez did receive a negative performance evaluation from Pedersen in May 2007. A year long delay between statutorily protected activity and the alleged retaliatory event is far too long to establish a causal connection absent other evidence relating to causation. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 481 (7th Cir. 2010). Moreover, the May 2007 evaluation was consistent with the criticisms Pedersen raised prior to Lopez's complaints of national origin discrimination. When an employee received negative evaluations prior to complaints of discrimination, the employee must put forward evidence to demonstrate that similar negative evaluations received after complaints of discrimination are in fact causally connected to those complaints. *Hancock v. Potter*, 531 F.3d 474, 479-80 (7th Cir. 2008). Lopez, however, points to nothing in the record to establish any connection whatsoever between his complaints of national origin discrimination and any negative performance evaluation that he received. Thus, he cannot establish that the May 2007 evaluation was retaliatory.

Similarly, Lopez cannot establish that Technical Concepts' decision to fill the sales positions in Chicago with other candidates is causally related to his complaints. First, at least one of the two positions that Lopez sought was filed in April 2006, three months before he complained of national origin discrimination. Further, prior to Lopez's complaints Whartanaby explained that the company did not have any entry-level sales positions in Chicago. Whartanaby also offered Lopez an entry-level sales position in North Carolina, which Lopez declined. Clearly, Technical Concepts' decision to fill a non-entry level position in Chicago in April 2006, two months prior to receiving any complaint from Lopez regarding discrimination, cannot have been retaliatory.

Technical Concepts did hire someone to a Chicago sales position in February 2007, after Lopez complained of discrimination. However, even a six-month lag between statutorily protected activity and an alleged retaliatory event is insufficient to infer a causal link between the two. *Leonard v. Eastern Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010). Moreover, the undisputed evidence demonstrates that Lopez did not have any sales experience and that Aubuchon believed the Chicago sales position required an experienced sales person. Because Lopez cannot show that he was qualified for the position, Technical Concepts' decision to fill the sales position with another person cannot be the basis of a retaliation claim. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004). Lopez offers nothing more than self-serving assessments of his qualifications, which are not sufficient to create a genuine issue of material fact. *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009).

Quite simply, there is absolutely no evidence in the record that Technical Concepts retaliated against Lopez after he complained of its discriminatory practices. The Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

5/4/11
Dated

Hon. William J. Hibbler
U.S. District Court